DARRELL W. COOK
State Bar No. 00787279
dwcook@attorneycook.com
STEPHEN W. DAVIS
State Bar No. 24066792
stephen@attorneycook.com
DARRELL W. COOK & ASSOCIATES
A PROFESSIONAL CORPORATION
6688 North Central Expressway, Suite 1000
Dallas, Texas 75206
(214) 368-4686
(214) 593-5713 Telecopy
**ATTORNEYS FOR PLAINTIFF**
**ANTHONY AZZARETTO**

## IN THE UNITED STATES COURT
## FOR THE NORTHERN DISTRICT OF TEXAS,
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **ANTHONY AZZARETTO,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-cv-00121-O** |
| | § | |
| **LEELIN TAYAG HARRINGTON,** | § | |
| *Defendant.* | | |

## PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, Plaintiff, ANTHONY AZZARETTO ("Plaintiff"), by and through his undersigned counsel, and files this his Amended Complaint, complaining of Defendant, LEELIN TAYAG HARRINGTON ("Defendant"), and in support of the same would respectfully show the Court as follows:

### I.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as complete diversity exists and the matter in controversy exceeds $75,000, exclusive of interest and

costs.  This matter was originally filed in the District Courts in and for the County of

Tarrant, State of Texas and was subsequently removed to this Court by the Defendant.

2.     Venue is otherwise proper in this district pursuant to under 28 U.S.C. § 1391(b)(2) and

(c)(2).  Defendant with the capacity to sue and be sued under applicable law, whether or

not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which

such defendant is subject to the court's personal jurisdiction with respect to the civil action

in question.

## II.

## LONG ARM JURISDICTION

3.     In the instant case, Defendant is a Filipino and U.S. citizen, residing in the State of Kansas,

who traveled to Texas during the Parties' romantic relationship and, while staying at

Plaintiff's home is Azel, Tarrant County, Texas, entered into an oral contract with Plaintiff

for a loan based upon Defendant's representations and in exchange for Defendant's

promises.  Negotiations regarding the loaned funds took place in Texas and in Kansas.

Plaintiff tendered the performance by loaning money for property in the Philippines.

Thereafter, Defendant would regularly request that Plaintiff loan her additional funds under

the terms of our agreement.  These requests were made while Defendant was living at

Plaintiff's home in Texas.  Plaintiff is a Texas resident who alleges that he has been

defrauded of the amounts he loaned to Defendant, the aggregate sum of which is

$77,285.00, when Defendant terminated the romantic relationship and breached the

Parties' oral agreement to return the loaned funds.  Plaintiff has sustained damages in

reliance upon the terms of the agreement because Defendant neither provided him with a

place to take care of him, nor returned the funds she had received after agreeing to do so, choosing instead to attempt to excuse repayment.

4.    Based upon the allegations that (1) Defendant harmed a Texas resident in Texas, (2) Defendant voluntarily entered into the oral contract with Plaintiff, and requested additional loans on fifteen separate occasions, creating a continuing business relationship with no set date of termination, establishes Defendant's contacts with Texas were purposeful rather than random, isolated, or fortuitous;[1] (3) Defendant has used the $77,285.00 Plaintiff loaned to Defendant establishing that Defendant has derived a substantial financial benefit, profit and advantage of Texas law and from the use of Plaintiff's money;[2] and (4) all or a substantial part of the events giving rise to Plaintiff's claims occurred in Tarrant County, Texas.  Taken together with evidence that the Defendant exploited a Texas resident and traveled into Texas to capitalize on a romantic relationship with a Texas resident, Plaintiff has established purposeful availment of the Defendant to Texas and provides a constitutional basis for exercising jurisdiction over Defendant in this case.  Defendant is therefore subject to specific personal jurisdiction pursuant to TEXAS CIVIL PRACTICES AND REMEDIES CODE §17.042, Texas Long-Arm Statute.

5.    A court has power to decide a case only if it has "both subject matter jurisdiction over the controversy and personal jurisdiction over the parties."[3]  Subject matter jurisdiction involves a court's "power to hear a particular type of suit," while personal jurisdiction "concerns the court's power to bind a particular person or party."[4]  Courts have personal

---

[1] See *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785 (the contacts of sellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are purposeful rather than fortuitous).
[2] *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016).
[3] *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010).
[4] *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

jurisdiction over a nonresident defendant when the state's long-arm statute permits such jurisdiction, and the exercise of jurisdiction is consistent with federal and state due-process guarantees.[5] The Texas Long-Arm Statute allows Texas courts to exercise jurisdiction over a nonresident defendant that "does business" in the State.[6] The Texas long-arm statute also broadly allows courts to exercise personal jurisdiction over a nonresident who "commits a tort in whole or in part in this state."[7] Because this statute reaches "as far as the federal constitutional requirements for due process will allow," Texas courts may exercise jurisdiction over a nonresident so long as doing so "comports with federal due process limitations."[8] Consistent with federal due process protections, a state court can exercise jurisdiction over a nonresident defendant only if (1) the defendant has established "minimum contacts" with the state and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."[9]

6.    Plaintiff has alleged that Defendant is subject to specific personal jurisdiction pursuant to TEXAS CIVIL PRACTICES AND REMEDIES CODE §17.042, Texas Long-Arm Statute because Defendant traveled to Texas and orally contracted with Plaintiff, a Texas resident while staying with Plaintiff at his home in Azle, Tarrant County, Texas, for a loan of money for the purposes of purchasing property and improving property in the Philippines as well as for half of the total cost of Defendant's personal vacation to Saint Lucia.  Plaintiff further

---

[5] *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013).
[6] Tex. Civ. Prac. & Rem. Code §17.042.
[7] *Id*. at §17.042(2)
[8] *Spir Star*, 310 S.W.3d at 872 (quoting *Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002))*.
[9] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).

alleges that Defendant requested the funds she required on fifteen separate occasions, often while staying at Plaintiff's home in Texas.

7.    Further, Plaintiff alleges that Defendant is liable for fraud, among multiple other intentional torts, and that the misrepresentations made by Defendant were made to a Texas resident while the Defendant was in Texas.

8.    Here, the actionable conduct is the Defendant's breach of an oral contract for a loan of money which was agreed upon, while Defendant was at Plaintiff's home in Texas, and that Plaintiff deposited the loaned amounts into Defendant's account from Texas, and Defendant was harmed.  But the fact that the actionable conduct occurred in Texas is only one stage of the analysis, and it is not enough.  No one disputes that Plaintiff resides in Texas and the brunt of any injuries he suffered from Defendant occurred in Texas. However, for jurisdiction to exist, the actionable conduct within Texas must be conduct through which Defendant purposefully had contact with Texas and sought some benefit, advantage, or profit by 'availing' itself of the jurisdiction.  In other words, is not enough to establish that contacts with Plaintiff constitute Defendant's minimum contacts with Texas. In this regard, Plaintiff has also alleged in this Case that Defendant has kept the $77,285.00 Plaintiff deposited into Defendant's account after Defendant's fifteen separate requests, establishing that Defendant has derived a substantial financial benefit, profit and advantage of Texas law and therefore Defendant has purposefully availed herself of Texas in connection with her actionable conduct (when she breached the oral contract by failing to return the loaned funds she had received, choosing instead to attempt to wrongfully excuse repayment), which occurred and caused harm in Texas.  And since Plaintiff's claims arise directly out of Defendant's breach and other tortious activity which occurred in Texas, the

allegations and evidence support the conclusion that Defendant has minimum contacts sufficient to support specific jurisdiction in Texas.

9.  In addition, a state has a special interest in exercising judicial jurisdiction over those who commit torts within its territory."[10]  Defendant, under the terms of the oral contract, solicited Plaintiff to for a loan of money on at least fifteen separate occasions, each time traveling to Texas to stay with Plaintiff and request the funds she needed.  Any exercise of specific personal jurisdiction over the Defendant by this Court should not surprise Defendant, nor be unfair to her, considering the nature of her alleged misconduct that occurred in Texas are such that she should reasonably have expected to be hauled into a Texas Court when she terminated their romantic relationship, choosing instead to excuse repayment or deliberately refuse to repay for the amounts loaned or return Plaintiff's personal property in an attempt to defraud Plaintiff.

### III.

### PARTIES

10.  Plaintiff, ANTHONY AZZARETTO, is an individual residing in the City of Azle,    Tarrant County, Texas.

11.  Defendant, LEELIN TAYAG HARRINGTON, is an individual residing in Wichita Kansas, as this cases arises out of the business conducted in this State and for which a contract is to performed in whole or in part in this State, and a tort was committed in whole or in part by this Defendant in this State, among other things as set forth more specifically below, this

---

[10] See, e.g., *Moncrief Oil*, 414 S.W.3d at 155 ("[T]he allegations that . . . Defendants committed a tort in Texas against a resident implicate a serious state interest in adjudicating the dispute."); *Spir Star*, 310 S.W.3d at 879 ("Texas has a significant interest in exercising jurisdiction over controversies arising from injuries a Texas resident sustains . . . ."); see also *Asahi*, 480 U.S. at 114 ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.").

Defendant has already been served with process via the state's long-arm statute by service on the Texas Secretary of State under Sections 17.041(1) and (2), and 17.044(b) of the TEXAS CIVIL PRACTICE & REMEDIES CODE at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079.   The Texas Secretary of State has already forwarded a copy of the service of process and *Plaintiff's Original Petition* via certified mail, return receipt requested to Leelin Tayag Harrington at 1436 South Todd Place, Wichita, Kansas 67207.  In addition, a courtesy copy of the State Court Petition was served upon Plaintiff's Counsel by e-mail on January 26, 2022. Defendant has already answered appeared in this matter.

## V.

## <u>FACTS</u>

12.   This case arises out of the Parties' romantic relationship, during which Defendant undertook manipulative steps to drain Plaintiff's retirement nest egg, which he had been wisely investing since his discharge from the U.S. Military, by manipulating Plaintiff into handing over $77,285.00 due to Defendant's exercise of undue influence over Plaintiff in a scheme to financially benefit Defendant.  Through manipulation, false promises and fraudulent representations, Defendant induced Plaintiff into entering into an oral agreement for a personal loan, under which Plaintiff loaned Defendant $77,285.00, and which Defendant made representations that she would repay the personal loan, take care of him and that they would live in "their" home in the Philippines, among other representations. Not only has Defendant cajoled the Plaintiff into liquidating his retirement nest egg, but Defendant has also terminated the relationship, has converted plaintiff's valuable personal property, and has never made any effort to repay the personal loan to Plaintiff or allowed

Plaintiff the opportunity to collect his personal property from Defendant's residence in Kansas. There is no evidence that these loans or that his personal property were gifts.

13.  Defendant has dual citizenship, as a Filipino citizen and U.S. citizen, who holds a master's or doctoral degree in social work from an accredited school of social work. Defendant immigrated to the U.S. from the Philippines as a result of a previous relationship to a U.S serviceman. Apparently, they had a falling out and separated, and Defendant has remained in the United States. Upon information and belief, Defendant has manipulated and cajoled other U.S. citizens in a scheme to financially benefit herself.

14.  Beginning on or around 2018, Plaintiff was introduced to Defendant where they began a romantic relationship, started dating, but lived separately. Plaintiff in Azle, Texas, and Defendant in Wichita, Kansas. Between 2018 and 2021, Defendant and Plaintiff were involved in a romantic relationship.

15.  Throughout their romantic relationship, Defendant would travel to Texas to stay with Plaintiff and spend time with him, and alternatively Plaintiff would travel to Kansas to spend time with Defendant.

16.  During the first two years Defendant would travel and reside at Plaintiff's home in Azle, Tarrant County, Texas for a week telecommuting with her clients in Kansas. It was during this time that Defendant began to take steps to induce Plaintiff into giving Defendant money that would financially benefit the Defendant, effectively exploiting and, little by little, pilfering away at Plaintiff's now diminishing financial resources. Defendant even sought the funds to pay for her son's college tuition. During the third year of their relationship Defendant would travel and stay at Plaintiff's home for 1/2 a month. Over the

course of the Parties' three-year relationship Defendant spent approximately 300 days living in Plaintiff's home.

17.   During the Parties' relationship it was not uncommon for Defendant to ask to borrow money.  Throughout the relationship, Defendant would ask for small amounts of money so that she could make rent, or to cover her other bills, so that she could make it to the next payday. Defendant always agreed to pay Plaintiff back at a later date.

18.   During one of Defendant's two-week stays in Plaintiff's home in Texas, in 2019, Defendant undertook further manipulative steps and further manipulation convincing Plaintiff to cash-in his fractional shares from various investments and make a personal loan to Defendant for the purchase of property and construction of a home in the Philippines. Defendant suggested that she would build a home in the Philippines in which Defendant and Plaintiff would cohabitate.  However, to construct the home, I would need to loan her half the funds for the construction of the home.   Negotiations regarding me loaning funds for the construction of the home took place in Texas and in Kansas.

19.   As a general rule, ownership of any land in the Philippines is exclusive and limited only to Filipino citizens. This is enshrined in the 1987 Philippine Constitution. However, there are very strict rules regarding non-Filipino citizens purchasing, owning, and investing in real estate and, by default, foreigners are not allowed to own land.

20.   As further inducement for arrangement of the personal loan, Defendant, in exchange, promised repay Plaintiff the amounts borrowed, as well as made additional oral representations that she would help him get established in the Philippines and to take care of him, if Plaintiff would loan her the money necessary, move to the Philippines, and live

with her in "their" new home, in exchange Plaintiff would have full use and enjoyment of the property in the Philippines or, the loaned funds would be repaid back to me.

21.   At the time of making the loans, Plaintiff was unaware that non-citizens could not own property in the Philippines.

22.   On a subsequent stay at Plaintiff's home in Texas, Defendant informed Plaintiff that she had identified the property in the Philippines that she wanted to purchase and requested Plaintiff loan her the funds.  Thereafter, Defendant would regularly request that Plaintiff loan her additional funds under the terms of our agreement. Many of these requests were made while she was in Texas living at Plaintiff's home.  Each time Defendant needed money, first, determined how much to request from Plaintiff.  Then Defendant travel would to Texas to stay with Plaintiff and Defendant, while she was residing in Plaintiff's home in Texas, requested the amount of funds from Plaintiff under Defendant's terms and conditions of the oral contract.  Therefore, the transactions for the personal loan under the oral contract were not the result of Plaintiff's, or some other third-party's unilateral acts.

23.   After each request, Plaintiff tendered performance by depositing the amounts she requested into her bank account from Plaintiff's bank branch in Texas.  Some of the deposits were made while Defendant was in Texas, and others were made while Defendant was elsewhere.  Since entering into the oral contract, Defendant traveled to Texas and stayed with Plaintiff at his residence, many times soliciting the funds at issue in this lawsuit.  In total Defendant solicited the funds at issue in this lawsuit on fifteen separate occasions.

24.   Defendant continued her ongoing exploitation scheme and further coerced Plaintiff to handing her half of the total cost of Defendant's September 2020 vacation to St. Lucia. Defendant, in exchange for the additional amount loaned, again promised to repay Plaintiff.

25.    Relying on Defendant's promises and assurances Plaintiff made the following withdrawals, and delivered the funds to Defendant:



26.    The aggregate value of the funds exceeded $77,285.00 dollars. Each time Defendant requested money under the terms of the oral agreement, Plaintiff transferred the requested funds to Defendant from his bank branch in Texas.



27.   As the date of this filing none of Defendant's repayment promises and assurances have not come true.  There is no property Plaintiff can attach, nor construction of a home of which Plaintiff.  And Defendant took someone else on her 2020 vacation to St. Lucia.  Not only has Defendant cajoled Plaintiff into liquidating all of his investment assets into Defendant's scheme to enrich herself with Plaintiff's money, but Defendant has also now decided to terminate the romantic relationship and refuse to repay the amounts loaned to Defendant.  Defendant has also gained a benefit, advantage, and profit during her visits with Texas Jurisdiction.



28.     In addition, at the time Defendant terminated the romantic relationship, Plaintiff had kept his separate property, that did not belong to the Plaintiff, at Plaintiff's residence in Kansas. Defendant even offered to meet Plaintiff in Oklahoma City.



29.     Because Defendant would not communicate further with Plaintiff, nor allow him onto her property and obtain his personal property, he was, therefore, required to leave numerous and valuable personal property including rare valuables, collectible items.

      a.     One (1) Win & Win "Black Wolf" Olympic recurve bow, with case;
      b.     One (1) Black CAE single shoulder pack, with arrows;
      **c.     Any and all archery equipment;**
      d.     Two (2) new fishing rods;
      e.     Two (2) new spinning reels;
      f.     One (1) new tackle box with assorted fishing gear, such as hooks, leaders, lures, sinkers, etc.; and,
      **g.     Various items of Plaintiff's clothing.**

30.     Despite Plaintiff's numerous requests to Defendant for payment, as well as the return of Plaintiff's personal property, Defendant has failed and refused to make payment on the personal loan and has refused to return Plaintiff's personal property.  When the Defendant

accepted Plaintiff's financial services, she was fully aware of the ramification to repay Plaintiff in the event of Defendant terminated the romantic relationship, and Defendant has deliberately continued to refuse to repay for the amounts loaned or return Plaintiff's personal property in an attempt to defraud Plaintiff.

## VI.

## CAUSES OF ACTION

## COUNT 1: BREACH OF CONTRACT

31.   Plaintiff incorporates the foregoing factual allegations herein as if fully set forth herein verbatim.

32.   Defendant and Plaintiff for valuable consideration, made and entered into an oral contract for the principal sum of $77,285.00 to Defendant for the purchase of property and construction of a home in the Philippines and for half of the total cost of Defendant's personal vacation to Saint Luci.  The oral contract is a binding and enforceable agreement between Plaintiff and Defendant.

33.   Plaintiff performed its contractual obligations and transferred the sum of $77,285.00 to Defendant.

34.   Defendant breached the oral contract by failing to pay in accordance with the contract terms.

35.   The breaches by Defendant resulted in injury to Plaintiff within the jurisdictional limits of this Court.

36.   Further, Plaintiff seeks all actual, consequential, and incidental damages that have resulted from the Defendant's breaches of the contract, plus costs of court, collection costs, other

expenses as may be permitted by applicable law, contractual pre- and post- judgment interest on the total of these amounts, and reasonable attorneys' fees.

37.    In the alternative, Defendant entered into a valid, enforceable oral agreement to form a joint venture with Plaintiff, wherein in exchange for a loan to the joint venture, Plaintiff had a community of interest in the joint venture for the purpose of purchasing and improving real property in the Philippines.  The terms of which were that the Parties agreed to share the profits and losses by cohabitating at the property with full use and enjoyment of the property, and agreed to the mutual right of management of the property in the Philippines, as well as upon termination of the fiduciary relationship created between the Defendant and Plaintiff (the "joint venturers"), the amounts loaned would be repaid to Plaintiff.

38.    Plaintiff performed his contractual obligations by loaning Plaintiff half the cost of the purchase and improvement of the property in the Philippines.

39.    Defendant breached the agreement by terminating the joint venture to share profits and losses, failing to reimburse Plaintiff the amount loaned, as agreed.

40.    Defendant's breaches caused Plaintiff injury in the amount of $77,285.00.

**COUNT 2: QUANTUM MERUIT**

41.    Plaintiff incorporates the factual allegations in the paragraphs above as if fully set forth herein.

42.    Pleading in the alternative, Plaintiff performed and delivered financial services to Defendant, which were accepted by Defendant.  Defendant accepted the financial services without compensating Plaintiff.  Defendant accepted the financial services, and knew, or under the circumstances reasonably should have known, that Plaintiff expected payment

from Defendant for the financial services when Defendant terminated their relationship. Plaintiff reasonably expects payment of the financial services provided. The financial services were reasonably worth the sum of $77,285.00 at the time they were furnished. Defendant's conduct proximately caused Plaintiff's damages.

43. The Plaintiff has presented the claim as described above to Defendant for payment. Defendant will be unjustly enriched in the amount claimed by Plaintiff if allowed to retain the benefit conferred on them without payment for the reasonable value of the services provided by Plaintiff to Defendant described above.

## COUNT 3: UNJUST ENRICHMENT

44. Plaintiff incorporates the factual allegations in the paragraphs above as if fully set forth herein.

45. In the further alternative, and without waiving or limiting Plaintiff previous allegations, it is entitled to recover its damages upon the quasi-contractual theory of unjust enrichment. Specifically, Plaintiff would show that the Defendant has been enriched by the financial services provided by Plaintiff to the Defendant. If Defendant is not required to pay for said services provided for Defendant's benefit, then Defendant would be unjustly enriched.

46. Plaintiff pays in the alternative for a judgment in the amount of the value of the services related to Defendant's breach, which Plaintiff would show the Court to be $77,285.00.

## COUNT 4: COMMON-LAW FRAUD

47. Plaintiff incorporates the factual allegations in the paragraphs above as if fully set forth herein.

48.   Defendant made representations to Plaintiff, that Defendant would pay in full for the services under the contract and under the contract. The representations were material. The representations were false.

49.   Defendant made further representations to Plaintiff, that Defendant would to help and take care of Plaintiff, live with her in "their" new home if Plaintiff would loan her the money necessary, move to the Philippines. . The representations were material. The representations were false.

50.   When Defendant made these representations, Defendant knew the representations were false. Defendant made the representations with the intent that Plaintiff act on them.

51.   Plaintiff relied on Defendant's representations; and the representations caused Plaintiff damages.

**COUNT 5: NEGLIGENT MISREPRESENTATION**

52.   Plaintiff incorporates the factual allegations in the paragraphs above as if fully set forth herein.

53.   Defendant represented to Plaintiff, before and during the course of their engagement that Defendants would repay Plaintiff for the financial services, and ultimately agreed to pay the note.

54.   Defendant did not exercise reasonable care or competence in obtaining or communicating the information.

55.   Plaintiff justifiably relied on Defendant's representations.

56.   Defendant's negligent misrepresentations proximately caused Plaintiff's injury.

## COUNT 6: CONVERSION

57.    Plaintiff incorporates the factual allegations in the paragraphs above as if fully set forth herein.

58.    Plaintiff, who loaned Defendant $77,285.00, owned, possessed, and had the right to immediate possession of the $77,285.00 upon Defendant's termination of the romantic relationship.  Plaintiff also owned, possessed and had the rights to his separate personal property, that did not belong to the Plaintiff, and kept at Plaintiff's residence in Kansas. Defendant has wrongfully exercised dominion or control over this money and personal property. As a proximate result of such conversion, Plaintiff has sustained the damages.

## COUNT 7: MONEY HAD AND RECEIVED

59.    Plaintiff incorporates the factual allegations in the paragraphs above as if fully set forth herein.

60.    For the equitable cause of action of money had and received, "[a]ll the plaintiff need show is that defendant holds money which in equity and good conscience belongs to him."[11]  It aims at the abstract justice of the case and looks solely to the inquiry whether the defendant holds money which belongs to the plaintiff."[12]

61.    Defendants obtained money from Plaintiff, as creditor, either by fraud, duress, or undue advantage through the actions outlined in the preceding paragraphs, money that in equity and good conscience belongs to Plaintiff.  Plaintiff has been damaged by Defendant's conduct.  Therefore, Plaintiff is entitled to equitable relief.

---

[11] *Staats v. Miller*, 243 S.W.2d 686,687 (Tex. 1951).
[12] *Id*. at 687-88.

## VII.

## CONDITIONS PRECEDENT

62.   All conditions precedent to Plaintiff's claims against the Defendant have occurred, been performed, satisfied, or otherwise fulfilled, or were waived.

## VIII.

## ATTORNEY'S FEES

63.   Plaintiff incorporates the factual allegations in the paragraphs above as if fully set forth herein.

64.   In accordance with §38.01 *et seq.* of the TEXAS CIVIL PRACTICE & REMEDIES CODE, Plaintiff is entitled to recover its reasonable attorney's fees incurred in prosecuting this action.

65.   Because of Defendant's breach, Plaintiff has been required to obtain legal counsel to bring this suit. Plaintiff has presented Plaintiff's demand to Defendant. Defendant has not tendered the amount owed within 30 days of when the claim was presented. Plaintiff is, therefore, entitled to recover an additional sum to compensate for the reasonable attorney's fees incurred in bringing this suit, with further and subsequent awards of attorney's fees in the event of appeals from this Court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, ANTHONY AZZARETTO, prays that Defendant, LEELIN TAYAG HARRINGTON, be cited to appear and answer herein and that upon final hearing Plaintiff have judgment against Defendant as follows:

     a)  judgment against Defendant for economic damages in the sum of $77,285.00;

b)  that judgment be entered for Plaintiff and against Defendant for fraud and for treble damages;

c)  that Plaintiff be awarded his actual, consequential and exemplary damages as a consequence of Defendant's intentional, fraudulent and tortious conduct;

d)  that Plaintiff be awarded pre-judgment interest and post-judgment interest at the highest lawful rate be assessed on all sums awarded herein from the date of judgment until paid;

e)  that Plaintiff be awarded attorneys' fees in a reasonable amount pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE § 38.001 and the contract at the trial and on appeal;

f)  that Plaintiff be awarded all costs of court; and

g)  for such other and further relief, at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

DARRELL W. COOK & ASSOCIATES
A PROFESSIONAL CORPORATION


/s/ Darrell W. Cook
DARRELL W. COOK
State Bar No. 00787279
dwcook@attorneycook.com
STEPHEN W. DAVIS
State Bar No. 24066792
stephen@attorneycook.com
6688 North Central Expressway, Suite 1000
Dallas, Texas 75206
 (214) 368-4686
 (214) 593-5713 Telecopy

**ATTORNEY FOR PLAINTIFF,
NETS TRAILER LEASING OF TEXAS, LLC**


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 4th day of March 2022 a true and correct copy of the above and foregoing was forwarded to the following in accordance with the FEDERAL RULES OF CIVIL PROCEDURE:

 Tailim Song
 Jordan Whiddon
 SONG WHIDDON, PLLC
 8111 LBJ Freeway, Suite 480
 Dallas, Texas 75251


/s/ Stephen W. Davis
_____
STEPHEN W. DAVIS